LAWRENCE L. DONOVAN, Appellant, *v.* THE INDUSTRIAL COMMIS-
SION *et al.*, Appellees.

Third District (Industrial Commission Division)   No. 3—84—0123 WC

Opinion filed July 5, 1984.

Karen L. Kendall and Peter F. Ferracuti, both of Peter F. Ferracuti & Associates, of Ottawa, for appellant.

Pamela Koroff Kesler, of Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago, for appellee Ottawa Silica Company.

Neil F. Hartigan, Attorney General, of Springfield (Alan R. Boudreau, Moshe Jacobius, and Carolyn B. Notkoff, Assistant Attorneys General, of Chicago, of counsel), for appellee Industrial Commission.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Lawrence Donovan, appeals from the judgment of the circuit court of La Salle County confirming the decision of the Industrial Commission. An arbitrator found that petitioner was exposed to the hazards of an occupational disease and was suffering from an occupational disease arising out of and in the course of his employment which left him permanently disabled. The arbitrator awarded petitioner $132.27 per week for life. The Commission affirmed the arbitrator's finding that petitioner was exposed to the hazards of an occupational disease, but it determined that petitioner did not prove that his condition of ill-being was causally connected to his exposure and denied his claim for compensation.

Petitioner testified before the arbitrator that he was employed by respondent Ottawa Silica Company from April 1956 to January 1977. During this 21-year period, petitioner held a number of different jobs. He cleaned cars, filled bags, brushed screens, worked in the drying operation, and did maintenance work. There was dust in the air at each job. Petitioner wore a mask or respirator when he worked indoors, but he frequently removed it because he could not breathe. The filters in the mask became blocked within 5 to 30 minutes.

Petitioner stated that he was experiencing shortness of breath,

dizziness, and weakness as early as 1975 and that he sought medical treatment at that time. He went to a Veterans Hospital in 1976 and stopped working in January 1977. In May 1977 he was hospitalized with a diagnosis of chemical diabetes mellitus, mild obstructive lung disease, hiatal hernia, and early alcoholic liver cirrhosis. Petitioner's complaints of shortness of breath, dizziness, and weakness persisted and were still present at the time of the hearing.

Petitioner presented the evidence deposition of Dr. Edwin R. Levine, the director of respiratory service at Edgewater Hospital and a specialist in chest diseases. Dr. Levine first saw petitioner in January 1978 when he was admitted to the hospital for X rays, a pulmonary-function test and a blood-gas study. Dr. Levine's diagnosis, based on petitioner's employment history and the test results, was that petitioner was suffering from disseminated interstitial pneumonitis and fibrosis, the basis of which is silicosis. The condition was caused by the inhalation of fine sand dust and was permanent.

Dr. William Buckingham testified for Ottawa Silica by means of an evidence deposition. Dr. Buckingham, a pulmonary specialist, examined petitioner in April 1978. He disagreed with Dr. Levine's interpretation of petitioner's X rays. Dr. Buckingham did not find fibrotic tissue with fine interstitial changes disseminated throughout the lung. He found calcified lymph nodes and opined that petitioner was suffering from mild airway obstruction related to cigarette smoking.

Based on this evidence, the arbitrator allowed petitioner's claim for compensation. Ottawa Silica sought a review of this decision and, on review, presented additional testimony from James Stukel, a metallurgist and Dr. Paul Gross, a pathologist.

James Stukel testified about the size and type of silica manufactured by Ottawa Silica. The smallest particle of sand to which petitioner could have been exposed was 44 microns. According to Dr. Levine's earlier testimony, a respirable particle was approximately five microns in size. Petitioner worked with St. Peter's Sandstone, which is neither flux calcine nor diatomaceous earth. Stukel also testified that Ottawa Silica did not manufacture fumed silica.

Dr. Paul Gross, a pathologist specializing in the diagnosis of lung disease caused by dust, testified that he customarily studies slides of lung tissue and is not competent to read lung scans or X rays. Relying on Dr. Levine's interpretation of petitioner's lung scans and X rays, as well as the radiologists' reports, however, it was Dr. Gross' opinion that petitioner did not have silicosis. He explained that there are three types of silicosis: multifocal nodular, interstitial, and acute. The first type is ruled out in petitioner's case because the X rays, ac-

cording to Dr. Levine's interpretation, fail to indicate the presence of multifocal nodules. Interstitial silicosis is eliminated because petitioner was not exposed to flux calcine, diatomaceous earth, or fumed silica, all of which cause this type of silicosis. Finally, acute silicosis, which is caused by exposure to massive quantities of extremely fine particles and which appears similar to pneumonia on X rays, is also excluded since petitioner was not exposed to massive quantities of fine silica nor did his X rays appear similar to those of a patient with pneumonia. Dr. Gross stated, however, that if petitioner had worn a mask only intermittently he would have been exposed to unknown quantities of silica.

Following the testimony of Dr. Gross, on October 12, 1979, the proofs were closed. On March 20, 1980, oral arguments were heard by a majority of the Commission. The record is unclear as to the subsequent events. According to Ottawa Silica, in August 1980, the Commission informally requested that the parties agree on the appointment of an impartial medical examiner to review petitioner's X rays and report to the Commission. On October 28, 1980, since the parties could not reach an agreement, Ottawa Silica filed a petition under section 19(c) of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1981, ch. 48, par. 172.54(c)) for the appointment of an impartial medical examiner. At the direction of the Illinois State Medical Society, Dr. Robert Tucker was appointed, and he reviewed petitioner's prior X rays. In a report dated August 17, 1981, Dr. Tucker concluded that there was no convincing evidence of pulmonary disease, and he found no evidence of diffuse densities or localized fibrotic densities.

At a hearing on September 30, 1981, petitioner objected to the Commission's consideration of Dr. Tucker's report and waived cross-examination of the doctor to preserve his objection. Dr. Tucker's report was admitted into evidence as a Commission exhibit, and on March 17, 1982, the Commission issued its decision. That decision was confirmed by the circuit court.

On appeal petitioner contends that the Commission exceeded its authority in ordering an impartial medical examination after the close of proofs on review, and that when the report of Dr. Tucker is excluded, the arbitrator's award was not against the manifest weight of the evidence. In addition to Ottawa Silica's answering brief, the Commission has filed a brief in this court urging that it properly ordered an impartial medical examination after it heard oral arguments.

Section 19(c) of the Workers' Occupational Diseases Act provides in pertinent part:

"(c)(1) At a reasonable time in advance of and in connection

with the hearing under Section 19(e) or 19(h), the Commission may on its own motion order an impartial physical or mental examination of a petitioner whose mental or physical condition is in issue, when in the Commission's discretion it appears that such an examination will materially aid in the just determination of the case. \*\*\*

(2) Should the Commission at any time during the hearing find that compelling considerations make it advisable to have an examination and report at that time, the commission may in its discretion so order." (Ill. Rev. Stat. 1981, ch. 48, par. 172.54(c).)

Petitioner maintains that the "hearing" referred to in section 19(c) is the period of time beginning with the presentation of evidence to the Commission and ending with the close of proofs. He urges that the Commission's request for an impartial examination was not made "in advance of and in connection with the hearing," nor was the request made "during the hearing."

The scope of sections 19(c)(1) and (c)(2) is a question of first impression. However, Supreme Court Rule 215(d)(1) (87 Ill. 2d R. 215(d)(1)), an analogous provision relating to the trial courts, has been interpreted by this court and provides us with guidance. In *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 394 N.E.2d 779, this court held that an impartial examination ordered after closing arguments had been made was ordered "during the trial." We decided that the trial period did not conclude until a final judgment was entered.

Black's Law Dictionary defines a hearing as "synonymous with trial." (Black's Law Dictionary 852 (4th ed. 1968).) We believe that the proper definition of "hearing" included the Commission's deliberative process. The hearing does not terminate until a decision is entered. The impartial examination ordered by the Commission prior to its decision was made "during the hearing" in accordance with section 19(c)(2).

Petitioner argues, however, that even if the examination was ordered during the hearing, the Commission did not state in its order "that compelling considerations make it advisable to have an examination and report at that time." The record before us does not include the Commission's order for the impartial examination. Since the order is not before us, we must presume that the Commission found compelling considerations warranted an impartial examination. (*Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 609, 400 N.E.2d 77.) Moreover, the absence of such language would not be fatal to the Commission's right to issue such an order. Since the medical evidence

was conflicting, the Commission certainly concluded that compelling considerations existed for an impartial examination.

■ Petitioner also contends that reading and interpreting X rays is not a physical examination. We do not agree. The use of X rays, a common diagnostic tool used by physicians, is encompassed within the term "physical examinations." Petitioner apparently concedes that physical examinations would include tests, and we find no distinction in the fact that Dr. Tucker reviewed prior X rays rather than new ones.

■ Petitioner has repeatedly referred to the 22-month delay from the close of proofs to the date of Dr. Tucker's report. While the record is unclear as to the cause of this inordinate delay, we do not condone such a delay on the part of the Commission, which clearly frustrates the Act's intended purpose of quick and efficient remedies. However, while we strongly discourage such delays in the future, the Commission's statutory authority to order an impartial examination is not affected in the present case.

■ Petitioner next contends that, when Dr. Tucker's report is stricken, the decision of the arbitrator is not against the manifest weight of the evidence. Our review is limited to whether the decision of the Industrial Commission is against the manifest weight of the evidence. (*Martin v. Industrial Com.* (1982), 91 Ill. 2d 288, 293-94, 437 N.E.2d 650.) The Commission exercises original jurisdiction and is not bound by the arbitrator's findings. (*Master Leakfinding Co. v. Industrial Com.* (1977), 67 Ill. 2d 517, 525, 367 N.E.2d 1308.) Therefore, the arbitrator's decision is not before us.

■ From our review of the record, the decision of the Commission is not against the manifest weight of the evidence. As we have concluded, the Commission was entitled to consider Dr. Tucker's report. Besides the conflicting testimony of Drs. Levine and Buckingham as to the interpretation of petitioner's X rays, the Commission had before it unrebutted testimony that petitioner was never exposed to silica particles small enough to be respirable. There was also evidence that Dr. Levine's interpretation of the X rays was at variance not only with Dr. Buckingham, but also with the radiologists at Edgewater Hospital.

■ The Commission has the responsibility of assessing the credibility of witnesses and determining the weight to be given to their testimony. (*Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 99, 427 N.E.2d 81.) The Commission properly considered all of the evidence before it and made a decision on the controverted facts. That decision is not against the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of La Salle County, confirming the decision of the Industrial Commission, is affirmed.

Judgment affirmed.

SEIDENFELD, P.J., BARRY, WEBBER, and KASSERMAN, JJ., concur.