WILLIAM NEWBERN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Atlantic & Pacific Food Stores, Appellee).

First District (Industrial Commission Division)   No. 1—92—2734WC

Opinion filed November 29, 1993.

McCULLOUGH, J., joined by WOODWARD, J., specially concurring.

Mel Gaines, Ltd., of Chicago, for appellant.

Dowd & Dowd, of Chicago (Joseph V. Dowd and Michael G. Patrizio, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, William Newbern, appeals from the judgment of the circuit court of Cook County. Claimant sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for injuries suffered on July 18, 1979, while in the employ of Atlantic and Pacific Food Stores (employer). The arbitrator awarded claimant two weeks' temporary total disability, permanent total disability as of November 1, 1979, and all medical expenses. Upon review, the Industrial Commission (Commission) awarded claimant 15 weeks of temporary total disability, $10,430.10 in medical expenses and permanent partial disability to the extent of 20% of a person. The circuit court confirmed the decision of the Commission. Claimant argues on appeal that the Commission improperly admitted into evidence the report of an independent medical examiner and that the Commission's decision is against the manifest weight of the evidence. We reverse and remand.

On the date of his accident on July 18, 1979, claimant, age 34, had been working for employer some eight years as a truck driver. His duties were to drive and assist in the loading and unloading of employer's trucks at employer's stores and warehouses in the Chicago area. In addition to working for employer, claimant also owned and operated a carpet laying and cleaning business. This business was closed in September or October of 1980.

On July 18, 1979, claimant and two other employees were unloading cases of groceries at one of employer's stores. The cases, each weighing 30 to 35 pounds, were stacked approximately eight feet high on a pallet. Claimant and one of the other employees were pushing the pallet from the rear while the third employee pulled from the front. As the pallet passed through the swinging doors of the store, one of the doors struck the pallet causing some of the cases of groceries to fall. Claimant testified the falling cases struck him in the head, neck, shoulder and back, rendering him temporarily unconscious. When he came to, claimant testified he felt pain to his back, left shoulder and left side of his head. After resting some 20 to 30 minutes, claimant reported the injury to his dispatcher. He then drove his truck back to employer's garage and went to Holy Cross Hospital. The hospital sent him home with instructions to take aspirin for the pain. The diagnosis was head contusion.

Two days after the accident, claimant sought treatment with Dr. Halls, his family doctor, at Midway Clinic. Claimant was given pain pills and an injection. Instead of returning to Dr. Halls, claimant began treatment with Dr. Dinesh Saraiya on July 24, 1979. Dr. Saraiya diagnosed recurrent sprain to the cervical and dorsal spine with muscle spasm, and prescribed rest, physical therapy, hot packs, medication and a cervical collar. Claimant continued to complain of sharp pain in his neck, however. Dr. Saraiya decided to admit claimant to Hillman Memorial Hospital. At the hospital, claimant was examined by Dr. Shah, who diagnosed traumatic neck and back syndrome. Dr. Shah ordered bedrest, analgesics, intravenous Robaxin and intensive physical therapy. X rays of the skull, chest and cervical spine all proved normal as did an EEG. Claimant was discharged on August 4, 1979, with instructions to continue physical therapy.

Claimant testified he continued to experience pain in his head and neck. He was examined by other physicians but no specific abnormal findings or any underlying organic neurologic derangements were noted to support claimant's complaints. Some of the doctors opined claimant had a functional overlay contributing to his pain problem. Claimant attempted to return to work for employer in late September, but after two or three days was unable to stand the pain. Employer eventually terminated claimant's employment in 1980.

At the arbitration hearing, Dr. Bernard Shulman, a psychiatrist who examined claimant in 1981 and 1982, opined claimant suffers from traumatic epilepsy, chronic depression, suicidal tendencies and atypical somatoform disorder, all permanent in nature and all causally related to the accident of July 18, 1979. Dr. Jack Arbit, a

clinical psychologist who examined claimant twice in 1982, testified for employer that he found no evidence of organic brain disturbance but did find evidence of significant psychological overlay and "conscious distortion of dysfunctional capabilities." He further opined there was no causal connection between claimant's accidental injury and his present condition of ill-being.

The arbitrator found in favor of claimant and awarded him all medical expenses and permanent total disability. On review, the Commission was unable to make a determination, and after oral argument, reopened proofs so that claimant could be examined by an independent medical expert, Dr. Irving C. Sherman. Both claimant and employer were granted leave to take the evidence deposition of Dr. Sherman, but Dr. Sherman refused to give his deposition in the presence of claimant. Dr. Sherman's report ultimately was admitted into evidence as a Commission exhibit. In the report, Dr. Sherman opined that while claimant may have been injured for a short period of time subsequent to the accident, claimant's present complaints were feigned. Based on this report, the Commission reversed the arbitrator's decision and awarded claimant temporary total disability of 15 weeks, permanent partial disability to the extent of 20% of a person and medical expenses. The circuit court, finding Dr. Sherman's report to have been properly admitted into evidence, confirmed the decision of the Commission.

■ Claimant argues the Commission erred in ordering and admitting into evidence an impartial medical examination. We disagree with claimant's first contention, but agree the Commission erred, in this instance, in admitting into evidence the doctor's report.

Section 19(c)(1) of the Act states:

> "At a reasonable time in advance of and in connection with the hearing under Section 19(e) or 19(h), the Commission may on its own motion order an impartial physical or mental examination of a petitioner whose mental or physical condition is in issue, when in the Commission's discretion it appears that such an examination will materially aid in the just determination of the case. The examination shall be made by a member or members of a panel of physicians chosen for their special qualifications by the Illinois State Medical Society. The Commission shall establish procedures by which a physician shall be selected from such list." (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(c)(1).)

Claimant first urges the order was untimely. According to claimant, the hearings were completed, proofs had been closed and oral arguments concluded, leaving the Commission with no authority to order the impartial medical examination. Employer contends, relying

on *F&E Erection Co. v. Industrial Comm'n* (1987), 162 Ill. App. 3d 156, 514 N.E.2d 1147, the order was timely because the proceedings had not yet been concluded as the Commission had not made any ruling. We believe employer's interpretation of the language of section 19(c)(1) is more consonant with the proper administration of justice. If we were to interpret the language as claimant suggests, a "fair" and informed decision may never have been forthcoming. Clearly the examination was still conducted "in connection with" the hearing. Because a hearing does not terminate until a decision is entered (see *Donovan v. Industrial Comm'n* (1984), 125 Ill. App. 3d 445, 449, 465 N.E.2d 1071, 1074-75), we believe the Commission had the authority to order the independent medical examination.

■ Claimant next argues the Commission did not follow its own rules in appointing Dr. Sherman to conduct the examination. While the record contains no correspondence between the Commission and the Illinois State Medical Society showing conformance with the procedures established by section 7020.100 of the Illinois Administrative Code, the record also contains no evidence of such procedures not being followed. (50 Ill. Adm. Code § 7020.100 (1991).) Moreover, during arguments on claimant's motion to quash the examination and objection to admission of the report, the Commission specifically noted an impartial procedure was used in contacting Dr. Sherman. Consequently, even if a procedural violation existed, such violation did not affect the integrity of Dr. Sherman's selection and should not be used to reject Dr. Sherman's report or overturn the Commission's decision.

■ Claimant's final contention with respect to Dr. Sherman's report is that he did not waive his hearsay objection to the admission of the report, contrary to the holdings of both the circuit court and the Commission. This time we agree.

In accordance with the Commission's order, claimant was examined by Dr. Sherman on July 21, 1988. Both parties were granted leave to take the doctor's deposition, which was scheduled for January 11, 1989. On the scheduled date, however, Dr. Sherman refused to give his deposition in the presence of claimant. Dr. Sherman's deposition was not taken. At the hearing before the Commission, the issue of Dr. Sherman's refusal to testify was discussed. The Commission indicated that the doctor would not be forced to come in and give his testimony and that his report would still be admitted into evidence. While claimant objected to the use of the report on several grounds, he reluctantly agreed the report should at least be admitted as a Commission exhibit to avoid any possible vouching for the credibility of the doctor or his report. We believe claimant made

every reasonable attempt to preserve his objections to the admission of the report in evidence. The law does not require a litigant to engage in futile acts. (See *Mesick v. Johnson* (1986), 141 Ill. App. 3d 195, 199, 490 N.E.2d 20, 24. See also *In re Marriage of Gordon* (1992), 233 Ill. App. 3d 617, 650, 599 N.E.2d 1151, 1173.) Clearly, claimant never intended to waive his objections to the doctor's report. Equally clear, claimant was denied the fundamental right of cross-examination, an especially critical right in this instance given the highly unfavorable nature of the doctor's report. Under such circumstances, the Commission erred not only in admitting the report into evidence, but also in relying upon it in fashioning its award.

Because we believe the Commission improperly admitted into evidence Dr. Sherman's report, this cause must be reversed and remanded. We therefore need not address in any further detail whether the Commission's decision is against the manifest weight of the evidence. We do wish to point out, however, that a disability resulting from a traumatic neurosis is compensable. (See. *Hook v. Industrial Comm'n* (1972), 53 Ill. 2d 245, 248, 290 N.E.2d 890, 892. See also *City of Chicago v. Industrial Comm'n* (1974), 59 Ill. 2d 284, 287, 319 N.E.2d 749, 751.) The question is whether claimant truly suffers from such a condition or disability.

For the aforementioned reasons, we reverse the judgment of the circuit court of Cook County confirming the decision of the Commission. We further remand this cause to the Commission for further proceedings pursuant to section 19(c). The Commission then may require Dr. Sherman to testify, and accordingly be cross-examined, or, in the alternative, the Commission may choose to appoint a new independent medical examiner and follow the appropriate procedures.

Reversed and remanded for further proceedings.

RAKOWSKI and SLATER, JJ., concur.

JUSTICE McCULLOUGH, specially concurring:
I agree with the majority that the Commission's order for an impartial medical examination was timely. Section 19(c)(2) specifically allows an appointment in stating "Should the Commission at any time during the hearing find that compelling considerations make it advisable to have an examination and report at that time, the commission may in its discretion so order." (Ill. Rev. Stat. 1987, ch. 48, par. 19(c)(2).) As pointed out, the proceedings had not been concluded.

Section 19(c) is most appropriate to be used in workers' compen-

sation proceedings. In the great majority of cases before this court, doctors, given a clear statement of facts and medical reports and procedures, reach opposite conclusions, giving the appearance of witness shopping by claimants and employers. Using the impartial medical examiner is a useful tool to make difficult decisions of causal connection, a benefit to both parties, to the Commission and the reviewing courts.

We are being extremely generous to the claimant in finding he did not waive any objection to Dr. Sherman's report. Claimant's counsel, as pointed out in the record and Judge White's order, withdrew his request for the doctor's deposition and asked that the medical report be submitted as a Commission exhibit. The record is sufficiently clear to find waiver. I do not object to the majority's remand only because section 19(c)(4) gives either party or the Commission the prerogative to "call the examining physician *** to testify" and "[a]ny physician so called shall be subject to cross-examination." Ill. Rev. Stat. 1987, ch. 48, par. 138.19(c)(4).

WOODWARD, J., joins this special concurrence.