(No. 55460.—)

CATERPILLAR TRACTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Stephan Lee, Appellee).

*Opinion filed September 17, 1982.*

Richard T. Buck and James B. Harvey, of Joliet (McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of counsel), for appellant.

Thomas M. Monahan, of Joliet, for appellee.

JUSTICE MORAN delivered the opinion of the court:

In this workmen's compensation case, the arbitrator found that plaintiff, Stephan Lee, sustained accidental injuries arising out of and in the course of his employment on February 3, 1977. He awarded plaintiff $194.40 per week for 103 weeks due to his temporary total incapacity for work and $194.40 per week for an additional 50 weeks resulting from a 10% permanent partial disability. On review, the Industrial Commission likewise found that plaintiff sustained accidental injuries arising out of and in the course of employment on February 3, 1977. It concluded that the condition was temporary and had not yet reached a permanent state. Accordingly, it awarded plaintiff $194.40 per week for 139⁶/₇ weeks of temporary total incapacity for work under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48,

par. 138.1 *et seq.*) and stated that the award should not bar a subsequent determination of additional compensation for temporary total disability or for permanent disability. The Commission also awarded plaintiff additional medical expenses under section 8(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)). The circuit court of Will County confirmed the Commission's decision, finding it was not contrary to the manifest weight of the evidence.

There is no dispute that plaintiff suffers from rheumatoid arthritis which was not caused by his employment. The sole issue is whether plaintiff's work-related incident was a contributing factor to his present disabled condition.

Plaintiff, who was 24 years old at the time of the incident, was employed as a milling machine operator for defendant, Caterpillar Tractor Company. Plaintiff's employment entailed his moving castings, weighing from five to 95 pounds, up to a milling machine. The heavier castings were lifted with the aid of an air hoist. On February 3, 1977, while bending over a transporting tub and attempting to move a 90-pound casting in position for the air hoist, plaintiff felt a "stabbing pain" in his lower back. Plaintiff testified that he had a very difficult time standing up and that he could not straighten his back. Plaintiff sat down for approximately 45 minutes, after which time he was unable to continue work. He reported this to his company foreman and went home. Plaintiff stated that he had great difficulty walking from the building to his car and experienced severe pain on the way home. The pain persisted throughout the night, and the following morning plaintiff went to the emergency room of Silver Cross Hospital. Plaintiff told the emergency room doctor of the previous night's injury at work and was treated as an outpatient. Plaintiff testified that the pain became more severe over the weekend. He re-

turned to work the following Monday, February 7, at which time defendant's medical director, Dr. L. C. Powell, examined plaintiff. Plaintiff was put on light duty that day, but that work caused the back pain to increase. The next day, at the start of work, plaintiff's foreman informed him there was no light work to do and told him to return to the company medical center, where he was advised to see a specialist.

Plaintiff then engaged Dr. Douglas J. Adelmann, an orthopedic surgeon, who administered cortisone injections and prescribed other medication and a lumbar corset. Plaintiff continued to receive treatment from Dr. Adelmann for the following five months. During this period, on March 8, plaintiff received a "Return to Work Pass" from Dr. Adelmann. However, it was rejected by Dr. Powell. In early April, unrelated to his employment, plaintiff changed a flat tire, which caused his back to hurt "a slight amount more." On April 22, plaintiff received another back-to-work pass from Dr. Adelmann with restrictions on lifting and bending. That pass was also rejected by Dr. Powell pending plaintiff's job reassignment.

In July, when plaintiff continued to experience back pains, he was hospitalized by Dr. Adelmann. Plaintiff received medication and underwent traction. The pain did not subside, and in August plaintiff was admitted to Marianjoy Rehabilitation Clinic, where he received medication, had physical therapy, and underwent tests. A medical history taken at the clinic stated that plaintiff had suffered back pains on and off for three previous years and that he had curvature of the spine. There was no radiation into plaintiff's arms and legs. One test revealed that plaintiff had ankylosing spondylitis involving mainly the thoracic spine. After approximately three weeks, plaintiff was discharged, whereupon he continued treatment as an outpatient. For about four weeks, plaintiff

went to the clinic every day for four hours of physical therapy; the following month he went three times a week and, thereafter, once a month until December 1978. During some of this time, plaintiff wore a "transit nerve stimulator" consisting of two probes over the lower back that pulsate an electric current to ease pain. Plaintiff subsequently returned to Dr. Adelmann, to whom he indicated that his back continued to hurt and that he could not obtain relief from pain. Plaintiff also was treated by a chiropractor and was examined by another orthopedic surgeon, Dr. Curtis L. Rentschler.

Plaintiff testified that, when he began work for defendant, he passed a company physical examination. He also stated that in the three years he was employed by defendant before the accident he twice hurt his back at work, but never went to the hospital or lost any time from work from those incidents. Plaintiff declared that at the time of the hearing he could not walk, sit, or stand for a prolonged period of time, nor bend or lift. Except for his attempt to work on February 7, 1977, plaintiff has not returned to his employment with defendant.

Dr. Adelmann testified that plaintiff has a dorsal kyphotic deformity. He stated that on April 22, 1977, he attempted to send plaintiff back to work with restrictions on bending, lifting, or squatting, which defendant was apparently unable to accommodate. He testified that when he last saw plaintiff on September 13, 1979, plaintiff was still complaining of pain in the same spot of his back as when he originally saw him on February 15, 1977. Dr. Adelmann testified that plaintiff had also developed swelling of the finger joints and sclerosis of his sacroiliac joint. He also stated that plaintiff had limited motion in bending and restricted internal revolution of the hips. His diagnosis was that plaintiff suffers from ankylosing spondylitis, a type of rheumatoid arthritis

that stiffens the joints and shows a predilection toward the central portion of the body.

Dr. Adelmann testified that rheumatic arthritis is not caused by a traumatic event, but that the kind of work plaintiff was doing could "aggravate" a preexisting condition. On re-cross-examination, the witness stated that, more specifically, plaintiff's type of work would not aggravate the disease but would cause pain. He also testified that, in his opinion, plaintiff is totally disabled from his regular occupation, and that the possibility of any future gainful work depends upon education, rehabilitation, and availability of light work.

Dr. Rentschler, in an evidence deposition, testified that he first examined plaintiff on February 6, 1978. He stated that plaintiff had a dorsal kyphosis, or curvature of the spine, relative to a juvenile epiphysitis. Upon a subsequent examination on September 29, 1978, plaintiff continued to experience the same back pain and loss of back function. Based on the tests performed at Marianjoy Clinic along with his own examination, Dr. Rentschler stated that the ankylosing spondylitis was one of the reasons for the disability from which plaintiff is suffering, although he was somewhat equivocal about using the term ankylosing, which is a further state of development. He testified, in response to a hypothetical question, that a work incident, like the one plaintiff experienced on February 3, 1977, was the precipitating incident that set off the chain of events resulting in his present state of disability. On cross-examination, Dr. Rentschler testified that rheumatoid arthritis is not caused by trauma or injury, but denied that an injury to the area could not aggravate it. According to Dr. Rentschler, a blow to the area could "precipitate" the rheumatoid arthritis in that it could make the condition apparent, *i.e.,* bring it from a subclinical to a clinical phase. He stated that, in his opinion, plaintiff's present condition

could be caused by a combination of the arthritic condition and the injury.

Dr. Rentschler also testified that he expects plaintiff's condition to continue and it would be unreasonable to send him back to work as a millwright. He declared that the type of work plaintiff could perform would involve very little lifting, bending or remaining in one position for a long time. No medical evidence was introduced by defendant.

Defendant argues that plaintiff's condition is due to rheumatoid arthritis, which was neither caused nor aggravated by plaintiff's employment. This court has repeatedly held that a preexisting condition does not prevent recovery under the Act if that condition was aggravated or accelerated by the claimant's employment. (*Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 177; *Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150, 155; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) The sole limitation to this general rule denies recovery where the employee's health has so deteriorated that any normal daily activity is an overexertion, or where the activity engaged in presented risks no greater than those to which the general public is exposed. *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 177-78; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18.

The claimant's injury need not be the sole factor that aggravates a preexisting condition, so long as it is a factor that contributes to the disability. (*Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 267; *Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150, 155. See *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434.) In addition, the question of whether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation of a preexisting condition, is a question of fact to be decided by the

Industrial Commission. (*Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 99; *Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 266; *Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 280-81, citing *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17-18.) Finally, to the extent that the medical testimony might be construed as conflicting, it is well established that resolution of such conflicts falls within the province of the Commission, and its findings will not be reversed unless contrary to the manifest weight of the evidence. *Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 175; *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d 171, 178; *Health & Hospitals Governing Com. v. Industrial Com.* (1979), 75 Ill. 2d 159, 163.

Here, plaintiff testified that, although he had some prior accidents involving his back, they did not cause him to lose any time from work. It was only after the incident involving moving the 90-pound casting on February 3, 1977, that plaintiff experienced back pain that prevented him from returning to work for defendant. As recounted above, Dr. Adelmann testified that, although plaintiff's employment could not aggravate the disease itself, it could have caused the pain symptoms to occur. Dr. Rentschler, as discussed earlier, testified that plaintiff's present condition was due to a combination of the rheumatoid arthritis and an injury like that suffered by plaintiff. For example, after the witness stated that an injury could bring the arthritis from a subclinical to a clinical level, the following exchange occurred between defendant's attorney and Dr. Rentschler:

> "ATTORNEY: But am I correct that it (the rheumatoid arthritis) can not be aggravated or made to be more—the arthritis is the arthritis. The blow doesn't make the arthritis more, does it doctor?
>
> DOCTOR: No, that's not correct either. There are certain relationships that exist, then, between an injury

and an arthritis. In other words, the patient who's got an arthritic condition, who is injured, of course doesn't heal as readily.

ATTORNEY: Yes.

DOCTOR: Okay. The persistency of findings, and of course with the persistency over a length of time, and the muscles being tight and scarring occuring [*sic*] then we enter into a permanency.

ATTORNEY: Caused by the arthritis or caused by the injury, doctor?

DOCTOR: Caused by the combination.''

Dr. Rentschler also testified that an incident such as the one that occurred on February 3, 1977, could have precipitated the chain of events resulting in plaintiff's present disability.

The evidence sufficiently establishes that the work-related incident, combined with the rheumatoid arthritis, is responsible for plaintiff's inability to work and is a causative factor in plaintiff's present disabled condition. Accordingly, the decision of the Industrial Commission is not contrary to the manifest weight of the evidence and will not be disturbed.

For the above reasons, the judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*