Docket No. 93729–Agenda 8–March 2003.

SISBRO, INC., Appellee, v. The INDUSTRIAL COMMISSION 
 et al.
 (George Rodriguez, Appellant).

Opinion filed May 22, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Claimant, George Rodriguez (claimant), twisted his ankle as he stepped out of a delivery truck and into a pothole while making a delivery of dairy products for his employer, Sisbro, Inc. (Sisbro). The Industrial Commission awarded claimant workers’ compensation benefits, finding that there was a causal relationship between this work-related injury and the acute onset of a degenerative condition in claimant’s right foot–Charcot osteoarthropathy. The circuit court confirmed the award.

On appeal, the Appellate Court, Industrial Commission Division, reversed the judgment of the circuit court, ruling that claimant’s condition was not compensable under the Worker’s Compensation Act because claimant’s health had deteriorated to such an extent that normal daily activity could have caused the injury (the “normal daily activity exception”) or because the activity which caused the injury presented risks no greater than those to which the general public is exposed. 327 Ill. App. 3d 868.

We granted claimant’s petition for leave to appeal (177 Ill. 2d R. 315(a)), and now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

BACKGROUND

Claimant filed an application for adjustment of claim seeking disability benefits from his employer pursuant to the Workers’ Compensation Act (the Act). 820 ILCS 305/1 
et seq
. (West 2000). Claimant alleged that an accidental injury arising out of and in the course of his employment was causally related to the onset of a degenerative condition in his right foot–Charcot osteoarthropathy–which caused him to be disabled and unable to work. Sisbro disputed the claim on three points: (1) whether the accidental injury arose out of and in the course of employment, (2) whether claimant’s disabling condition was causally related to his injury, and (3) the amount of claimant’s annual earnings. On July 6, 1999, a hearing was held before an arbitrator to resolve the disputed matters.

At this hearing, the arbitrator learned that claimant was a 54-year-old male who had been afflicted with Type II (adult onset) diabetes for the past six years. For the past 2½ years, claimant was employed by Sisbro as a delivery truck driver. Claimant’s job required him to drive an 18-wheeler truck to St. Louis to pick up dairy products and then deliver them to various grocery stores in Illinois. Claimant also was required to load the truck at St. Louis and off-load product from the truck at various grocery stores.

Claimant testified before the arbitrator that, on March 26, 1998, after backing into the docking area of Peavly Dairy to pick up a load of dairy products, he twisted his right ankle when he stepped down out of the truck and into a pothole. Claimant testified that, at the time of the incident, he felt pain and his right ankle swelled slightly. The swelling and pain resolved within a few days.

Claimant testified that he visited a podiatrist, Dr. Reed, on April 6, 1998, for preventative foot care in relation to his diabetes. Although claimant had no pain or swelling in his ankle at that time, he informed the doctor of the March 26 accident and was advised to notify the doctor if his condition changed. Over the next few weeks, claimant’s ankle began to swell repeatedly and the swelling would not resolve. Claimant saw Dr. Reed again on April 24, 1998, at which time X rays were taken and tests were performed. Based on these tests, claimant was diagnosed with Charcot osteoarthropathy and ordered to stay off his foot.

Claimant supported his claim with the May 26, 1999, evidence deposition of Dr. Brennan R. Reed, a podiatric orthopedist and claimant’s treating physician. In this deposition, Dr. Reed testified that he began treating claimant in 1995, when claimant suffered a broken toe. Since that time, Dr. Reed saw claimant about every two to three months for preventative foot care in conjunction with claimant’s diabetes. Dr. Reed explained that diabetes causes accelerated vascular disease and neuropathy (nerve damage) and, accordingly, diabetics are susceptible to an increased risk of injury to their lower extremities.

Dr. Reed testified that he examined claimant’s feet on April 6, 1998, as part of a regularly scheduled preventative care visit. At that time, claimant mentioned that he had twisted his ankle a few days earlier and had experienced some pain and swelling in his ankle and foot. Dr. Reed observed no evidence of pathology at the time of this exam and, consequently, took no action. On April 24, 1998, however, claimant contacted Dr. Reed’s office complaining of pain and swelling in his right ankle and foot. Dr. Reed saw claimant that same day and the exam revealed that claimant “had gross swelling, which is edema, and heat or erythema of the right foot, entire ankle, dorsal foot and his digits as well. The foot was also ruborous, which means red in coloration, and there was mild pain to deep palpation of the dorsal mid-foot over what we call the Lis Francs.” X rays of claimant’s foot showed “marked chronic degenerative changes involving the ankle.” Based on these X rays, Dr. Reed diagnosed claimant’s condition to be “acute onset of diabetic Charcot osteoarthropathy.” Dr. Reed defined Charcot as a condition associated with the destruction of the bone and tissue of the joint caused by an underlying neurological involvement, often related to diabetes. The recommended treatment for Charcot is to keep the joint rested to give the joint an opportunity to heal and to avoid any further injury or destruction. For this reason, claimant’s leg was placed in a cast for support and claimant was advised to keep the leg elevated and to avoid placing any weight on the leg. Accordingly, claimant was unable to work.

When asked about what might have caused Charcot to develop in claimant’s right ankle, Dr. Reed explained that Charcot is typically initiated by some type of trauma. Dr. Reed admitted that, in some instances, the trauma may be minor. The mere act of stepping off a curb, walking on uneven ground, or wearing uncomfortable shoes may trigger Charcot. In the present case, however, it was Dr. Reed’s opinion, based on a reasonable degree of medical certainty, that the trauma which initiated the onset of Charcot in claimant’s right ankle was the work-related accident on March 26, 1998, when claimant twisted his ankle stepping down from his truck. Dr. Reed testified that, in his opinion, claimant had the underlying neuropathy, but had not developed Charcot in his right ankle prior to March 26, 1998. The accident, he said, triggered the acute onset of Charcot osteoarthropathy.

 Sisbro offered an opposing expert opinion through the evidence deposition of Dr. John Gragnani, a physician who is board certified in occupational and environmental medicine and specializes in physical medicine and rehabilitation. At the request of Sisbro, Dr. Gragnani examined claimant once on July 6, 1998. Based on this single examination and a review of claimant’s medical records, Dr. Gragnani offered the opinion that the Charcot condition in claimant’s right ankle was a “much more long-standing condition” which preexisted March 26, 1998. In his view, the Charcot joint developed slowly over time as a result of claimant’s poorly controlled diabetes, the related neuropathy, and “microtraumas” to the feet caused by everyday living.

After considering all of the evidence, the arbitrator issued a written memorandum of decision on September 17, 1999. The arbitrator ruled that claimant’s act of twisting his ankle was an accident which arose out of and in the course of his employment with Sisbro. Further, the arbitrator held:

“Based on [the claimant’s] uncontradicted testimony regarding the onset of his condition, and the more credible opinions of Dr. Reed, the Arbitrator finds that [the claimant’s] condition of ill-being, being Charcot osteoarthropathy, is causally related to his injury.”

The arbitrator ruled that claimant had been temporarily and totally disabled for a period of 62 and 3/7 weeks and found claimant eligible to receive compensation for this period. The arbitrator also awarded claimant the further sum of $983.65 in medical expenses and ruled that the current award of temporary total disability compensation would not be a bar to any further hearings for additional amounts of temporary total disability compensation or for compensation for permanent disability.

Sisbro filed a petition for review with the Industrial Commission pursuant to section 19(b) of the Act. 820 ILCS 305/19(b) (West 2000). Upon review, the Industrial Commission affirmed and adopted the decision of the arbitrator in a written order dated March 16, 2000. In addition, the Commission remanded the matter to the arbitrator “for further proceedings for a determination of a further amount of temporary total compensation or of compensation for permanent disability, if any, pursuant to 
Thomas v. Industrial Comm’n
, 78 Ill. 2d 327 (1980).”

Sisbro sought review of the Industrial Commission’s decision in the circuit court of Adams County. In a hearing before Judge Dennis K. Cashman, counsel for Sisbro argued:

“This case, I believe, is a classic example of a case where the [claimant’s] injury did not arise out of employment. I believe it should be analyzed under the cases I have set out to you in my brief, principally that of the 
Hansel & Gretel
 case [215 Ill. App. 3d 284 (1991)].”

Later on in his argument, Sisbro’s counsel restated his position:

“You can decide whether the decision the Commission made was against the manifest weight of the evidence once you look at the evidence in this case, but, nevertheless, even if you decide the stepping in the hole was the inciting trauma, if there has to be a trauma to start this condition, it’s still not compensable as an accident because he was at no greater risk to–by the pothole or hole stepped in, by driving a truck. The risk he had was a risk peculiar to him because of his diabetic condition, which was, again, to use my words, so out of control that anything could have incited the disease.”

The circuit court, after hearing counsel’s argument, held that, “the question is whether [the injury] truly falls within the category of a work-related injury.” The circuit court then ruled that the Industrial Commission’s resolution of this factual issue was not against the manifest weight of the evidence and confirmed the Commission’s decision.

Once again, Sisbro appealed. The Appellate Court, Industrial Commission Division, heard the appeal. In a split decision, a majority of the court reversed the decision of the Industrial Commission, finding that “[a]n employee whose preexisting condition was aggravated by an accident at work is not entitled to [worker’s compensation] benefits ‘where [his] health has so deteriorated that any normal, daily activity could have caused the injury, 
or 
where the activity engaged in presents risks no greater than that to which the general public is exposed.’ ” (Emphasis in original.) 327 Ill. App. 3d at 874, quoting
 General Refractories v. Industrial Comm’n
, 255 Ill. App. 3d 925, 931 (1994).

The majority further held:

“The arbitrator found that claimant’s accident of March 1998 caused his Charcot but did not consider whether claimant nonetheless should be barred from compensation in light of uncontradicted testimony that normal daily activity was sufficient to cause Charcot in claimant. Nor did the Commission, in reviewing the findings of the arbitrator, consider either of the two exceptions to the rule permitting compensation for work-related aggravation of a preexisting condition. Because we determine that this case falls into one of those exceptions, we hold that the Commission’s award of compensation was against the manifest weight of the evidence.” 327 Ill. App. 3d at 879.

We granted claimant’s petition for leave to appeal. 177 Ill. 2d R. 315(a). The Illinois AFL-CIO and the Illinois Trial Lawyers Association have filed briefs 
amicus curiae
 in support of claimant, George Rodriguez.

ANALYSIS

In the case at bar, claimant argues that the appellate court erred in reversing the Industrial Commission’s award of benefits. Claimant contends that the appellate court failed to accord the appropriate deference to the factual findings of the Industrial Commission and, in addition, applied an overly broad interpretation of the “normal daily activity” limitation on recovery in preexisting condition cases. We agree.

To obtain compensation under the Act, a claimant bears the burden of showing, by a preponderance of the evidence, that he has suffered a disabling injury which arose out of and in the course of his employment. 
Baggett v. Industrial Comm’n
, 201 Ill. 2d 187 (2002)
; Paganelis v. Industrial Comm’n
, 132 Ill. 2d 468, 480 (1989);
 Horath v. Industrial Comm’n
, 96 Ill. 2d 349, 356 (1983);
 Jones v. Industrial Comm’n
, 93 Ill. 2d 524, 526 (1983); 
Rogers v. Industrial Comm’n
, 83 Ill. 2d 221, 223 (1980). “In the course of employment” refers to the time, place and circumstances surrounding the injury. 
Lee v. Industrial Comm’n
, 167 Ill. 2d 77, 81 (1995); 
Scheffler Greenhouses, Inc. v. Industrial Comm’n
, 66 Ill. 2d 361, 366 (1977). That is to say, for an injury to be compensable, it generally must occur within the time and space boundaries of the employment. 1 A. Larson, Worker’s Compensation Law §12.01 (2002). It is not enough, however, to simply show that an injury occurred during work hours or at the place of employment. The injury must also “arise out of” the employment. 
Parro v. Industrial Comm’n
, 167 Ill. 2d 385, 393 (1995) (the occurrence of an accident at the claimant’s workplace does not automatically establish that the injury arose out of the person’s employment); 
Caterpillar Tractor Co. v. Industrial Comm’n
, 129 Ill. 2d 52, 62 (1989).

The “arising out of” component is primarily concerned with causal connection. To satisfy this requirement it must be shown that the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. 
Caterpillar Tractor Co. v. Industrial Comm’n
, 129 Ill. 2d 52, 58 (1989). Stated otherwise, “an injury arises out of one’s employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citations.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties.” 
Caterpillar Tractor Co. v. Industrial Comm’n
, 129 Ill. 2d at 58.

In the case at bar, the Commission found that claimant’s act of twisting his ankle as he stepped down from the 18-wheeler delivery truck was an accidental injury which arose out of and in the course of his employment. Sisbro does not seriously dispute this finding. Rather, Sisbro argues that this accidental injury was not causally-related to claimant’s disabling condition, Charcot osteoarthropathy. Sisbro argues that the overwhelming weight of the evidence shows that claimant’s condition (Charcot) was the result of a preexisting condition (diabetes) and that his preexisting condition (diabetes) was so “out of control” that it could have been aggravated by normal activities of life. Moreover, Sisbro contends that the appellate court correctly overturned the Commission’s decision as against the manifest weight of the evidence because the Commission failed to consider whether the “normal daily activity exception” to compensability applied under the facts of this case.

A. Causal Connection in Preexisting Condition Cases

It has long been recognized that, in preexisting condition cases, recovery will depend on the employee’s ability to show that a work-related accidental injury aggravated or accelerated the preexisting disease such that the employee’s current condition of ill-being can be said to have been causally-connected to the work-related injury and not simply the result of a normal degenerative process of the preexisting condition. 
Caterpillar Tractor Co. v. Industrial Comm’n
, 92 Ill. 2d 30, 36-37 (1982); 
Caradco Window & Door v. Industrial Comm’n
, 86 Ill. 2d 92, 99 (1981); 
Azzarelli Construction Co. v. Industrial Comm’n
, 84 Ill. 2d 262, 266 (1981); 
Fittro v. Industrial Comm’n
, 377 Ill. 532, 537 (1941).

It is axiomatic that employers take their employees as they find them. 
Baggett
, 201 Ill. 2d at 199. “When workers’ physical structures, diseased or not, give way under the stress of their usual tasks, the law views it as an accident arising out of and in the course of employment.” 
General Electric Co. v. Industrial Comm’n
, 89 Ill. 2d 432, 434 (1982). Thus, even though an employee has a preexisting condition which may make him more vulnerable to injury, recovery for an accidental injury will not be denied as long as it can be shown that the employment was also a causative factor. 
Caterpillar Tractor Co. v. Industrial Comm’n
, 92 Ill. 2d at 36; 
Williams v. Industrial Comm’n
, 85 Ill. 2d 117, 122 (1981); 
County of Cook v. Industrial Comm’n
, 69 Ill. 2d 10, 18 (1977);
 Town of Cicero v. Industrial Comm’n
, 404 Ill. 487 ( 1949) (It is a well-settled rule that where an employee, in the performance of his duties and as a result thereof, is suddenly disabled, an accidental injury is sustained even though the result would not have obtained had the employee been in normal health). Accidental injury need not be the sole causative factor, nor even the primary causative factor, as long as it was 
a
 causative factor in the resulting condition of ill-being.
 Rock Road Construction Co. v. Industrial Comm’n
, 37 Ill. 2d 123, 127 (1967).

Whether a claimant’s disability is attributable solely to a degenerative process of the preexisting condition or to an aggravation or acceleration of a preexisting condition because of an accident is a factual determination to be decided by the Industrial Commission. 
Roberts v. Industrial Comm’n
, 93 Ill. 2d 532, 538 (1983); 
Caterpillar Tractor Co. v. Industrial Comm’n
, 92 Ill. 2d at 36-37; 
Caradco Window & Door v. Industrial Comm’n
, 86 Ill. 2d 92, 99 (1981). Further, a reviewing court must not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor should a court substitute its judgment for that of the Commission unless the Commission’s findings are against the manifest weight of the evidence. 
Parro v. Industrial Comm’n
, 167 Ill. 2d 385, 396 (1995); 
Castaneda v. Industrial Comm’n
, 97 Ill. 2d 338, 341 (1983). “[T]o the extent that the medical testimony might be construed as conflicting, it is well established that resolution of such conflicts falls within the province of the Commission, and its findings will not be reversed unless contrary to the manifest weight of the evidence.” 
Caterpillar Tractor Co. v. Industrial Comm’n
, 92 Ill. 2d at 37.

In the case at bar, Sisbro’s main argument before the arbitrator was that there was no causal connection between claimant’s work-related injury (the twisted ankle) and his condition of ill-being (Charcot). Sisbro’s position, as set forth by its medical expert, Dr. Gragnani, was that claimant’s Charcot osteoarthropathy was the result of the normal degenerative process of his preexisting diabetic condition and the associated neuropathy. Sisbro contended that claimant’s diabetic condition was so “out of control” that Charcot osteoarthropathy developed as a result of normal activities of life and not as a result of the work-related accident. Sisbro still maintains this to be true.

As noted above, the arbitrator rejected Sisbro’s argument, finding more credible the opinion of claimant’s expert that claimant’s Charcot osteoarthropathy was triggered when he twisted his ankle. The Commission adopted the decision of the arbitrator. The record clearly supports this determination.

The testimony of Dr. Reed, claimant’s treating physician, established that claimant was asymptomatic for Charcot osteoarthropathy prior to March 26, 1998. Shortly after twisting his right ankle, however, claimant developed Charcot in his right ankle. Further, Dr. Reed, who has experience in treating diabetic foot problems, testified that Charcot is typically triggered by some trauma. Although the triggering trauma can, in some instances, be very minor, Dr. Reed testified that he believed, to a reasonable degree of medical certainty, that the onset of Charcot in claimant’s right ankle was initiated as a direct result of the work-related incident on March 26, 1998, when claimant twisted his ankle. It is true that Sisbro presented conflicting expert testimony, but it was within the province of the Commission to judge the credibility of the witnesses, to draw reasonable inferences from their testimony, and to resolve any conflict in claimant’s favor. See 
Parro v. Industrial Comm’n
, 167 Ill. 2d at 396.

We cannot say that the Commission’s determination of a causal relationship between claimant’s work-related injury and his condition of ill-being is against the manifest weight of the evidence. There is support in the record for the Commission’s finding that the work-related accidental injury aggravated or accelerated claimant’s preexisting condition. Thus, compensation was properly awarded to claimant.

Ordinarily, our review would end at this juncture since our scope of review is limited to deciding whether the Commission’s award of compensation is against the manifest weight of the evidence. However, Sisbro argues, and the appellate court held below, that “despite the existence of a causal connection between the accident in March 1998 and claimant’s Charcot, claimant is not entitled to compensation because Drs. Reed and Gragnani agreed that even minor trauma can cause the onset of Charcot arthropathy in claimant.” 327 Ill. App. 3d at 872.

B. The “Normal Daily Activity Exception”

In 
County of Cook v. Industrial Comm’n
, 69 Ill. 2d 10, 17 (1977), we said that, “[t]o come within the [workers’ compensation] statute the employee need only prove that some act or phase of the employment was a causative factor of the resulting injury.” We also noted, however, that:

“The sole limitation to the above general rule is that where it is shown the employee’s health has so deteriorated that any normal daily activity is an overexertion, or where it is shown that the activity engaged in presented risks no greater than those to which the general public is exposed, compensation will be denied.” 
County of Cook
, 69 Ill. 2d at 18.

Sisbro interprets this “limitation” language to mean that there exists a “normal daily activity exception” to the general rule allowing compensation for work related injuries which aggravate or accelerate a preexisting condition. Sisbro maintains that the majority of the appellate court was correct when it held that “a claimant is not entitled to compensation, 
regardless of whether his condition of ill-being was caused by work-related aggravation of a preexisting condition
, if his physical condition has so deteriorated that his condition of ill-being 
could have been
 produced by normal daily activity.” (Emphases added.) 327 Ill. App. 3d at 873. Thus, it is Sisbro’s position that, even if the Commission was correct when it found a causal connection between claimant’s work-related injury and the onset of Charcot, we must find the award of benefits to be against the manifest weight of the evidence because the Commission “did not consider whether claimant nonetheless should be barred from compensation in light of uncontradicted testimony that normal daily activity was sufficient to cause Charcot in claimant.” 327 Ill. App. 3d at 879. In other words, Sisbro contends that, even when a work-related accidental injury is shown to be an 
actual
 causal factor in bringing about an employee’s disabling condition, recovery should be denied if normal daily activity 
could have
 brought on claimant’s disabling condition. We disagree.

In 
County of Cook
, we cited 
National Malleable & Steel Castings Co. v. Industrial Comm’n
, 32 Ill. 2d 184 (1965), and 
Illinois Bell Telephone Co. v. Industrial Comm’n
, 35 Ill. 2d 474 (1966), as the basis for our finding a “limitation” on the general rule that compensation is available to a claimant as long as a work-related injury was a causative factor in the aggravation or acceleration of a preexisting condition. Thus, we look to those cases to interpret the meaning of the “limitation” language we used in 
County of Cook
.

In 
National Malleable
 an employee died of a heart attack. The employee’s widow then filed a workers’ compensation claim alleging that the employee had sustained accidental injuries which arose out of and in the course of his employment and that there was a causal relationship between the alleged injuries and the employee’s subsequent heart attack and death. Evidence was presented which established that although the employee reported to work on the alleged day of the “accident,” he had been sent home before he began his shift because he did not feel well. After leaving work, the employee went to a medical center, where he saw a doctor and reported that he had been having chest pains over the previous four-day period. The doctor prescribed some medication. After filling the prescription, the employee returned home and went to bed. He was found dead the next morning.

A physician who was called as a medical expert in support of the claim, gave the opinion that the employee showed definite signs of heart disease over the four-day period prior to his death and, as a result, any exertion such as walking up and down stairs, driving to work, or going to the doctor’s office, could have precipitated his fatal heart attack. Since the employee had performed these activities on the workday prior to his death, the expert concluded that the employee’s cause of death “was ‘involved’ with the decedent’s final work episode.” We rejected this opinion and found no causal relationship between the employee’s fatal heart attack and his employment. Quoting a New York case, 
Burris v. Lewis
, 2 N.Y.2d 323, 326, 141 N.E.2d 424, 426 (1957), we said,

“ ‘But where, as here, a heart has deteriorated so that any exertion becomes an over-exertion, where the mere circumstance that the employee was engaged in some kind of physical labor is what impels the doctor to testify that his work caused his death, we would have reached a point, if this award were to be upheld, where all that is necessary to sustain an award is that the employee shall have died of heart disease.’ ” 
National Malleable & Steel Castings Co. v. Industrial Comm’n
, 32 Ill. 2d at 189.

Similarly, in 
Illinois Bell Telephone Co. v. Industrial Comm’n
, 35 Ill. 2d 474 (1966), an employee died at home as a result of a heart attack. The only connection between the employee’s heart attack and his employment was that, earlier on the day of his fatal attack, the employee had walked four blocks to deliver some papers and, upon returning to his office, felt ill and took a nitroglycerin pill. Two doctors testified that there was a causal connection between the employee’s work activities and his subsequent death, “basing their opinions on the fact that [the employee] had a pre-existing heart condition and that walking magnified the work effort.”
Illinois Bell Telephone
, 35 Ill. 2d at 476. However, we found the work connection too tenuous. Citing to 
National Malleable
 we said:

“The mere fact that he was at work on the day of his heart attack and left early is not sufficient to establish a causal relationship between his employment and his subsequent death, nor is it enough, where one’s heart has deteriorated so that any exertion becomes an overexertion, to merely show that he had engaged in some kind of physical activity before suffering the attack.” 
Illinois Bell Telephone
, 35 Ill. 2d at 477.

Notably, in 
Rock Road Construction Co. v. Industrial Comm’n
, 37 Ill. 2d 123, 127 (1967), we distinguished 
National Malleable
 and 
Illinois Bell
. In 
Rock Road
, the claimant was an asphalt truck driver who, after making a pickup, died at the wheel of the delivery truck Claimant’s expert expressed the opinion that the decedent’s duties in connection with climbing upon the truck and rolling the tarpaulin up and down on the day of his death were sufficient to precipitate his fatal heart attack. Although the employer provided three medical experts, they could not agree on what had precipitated the claimant’s heart attack.

On review, we rejected the employer’s contention that claimant’s condition had so deteriorated that any activity might have precipitated the attack, stating:

“[T]he normality of the activity involved for the victim of a heart attack is not the controlling factor in these cases. ***

It seems likely from this record that the ultimate result of decedent’s heart condition would have been death at some indeterminate future date. It is, of course, possible that this could have occurred in a situation wholly unrelated to work or exertion. But neither of these circumstances necessarily renders an award of compensation against the manifest weight of the evidence [citations] if it may be legitimately inferred from the evidence before the commission that occupational activity or exertion was in fact a causative factor in hastening decedent’s death.” 
Rock Road Construction
, 37 Ill. 2d at 128.

National Malleable
 and 
Illinois Bell
 do not stand for the proposition that where a causal connection between work and injury has been established, it can be negated simply because the injury might also have occurred as a result of some “normal daily activity.” Rather, these cases demonstrate that whether “any normal daily activity is an overexertion” or whether “the activity engaged in presented risks no greater than those to which the general public is exposed” are matters to be considered when deciding whether a sufficient causal connection between the injury and the employment has been established in the first instance. We have never found a causal connection to exist between work and injury and then, in a further analytical step, denied recovery based on a “normal daily activity exception” or a “greater risk exception.”

We note that, in the case at bar, the appellate court, in its majority opinion, cites 
County of Cook v. Industrial Comm’n
, 68 Ill. 2d 24 (1977), 
Greater Peoria Mass Transit District v. Industrial Comm’n
, 81 Ill. 2d 38 (1980), and 
Hansel & Gretel Day Care Center v. Industrial Comm’n
, 215 Ill. App. 3d 284 (1991), as standing for the proposition that “a claimant cannot receive benefits where, due to his debilitated state, his condition of ill-being 
could have been caused
 by normal daily activities.” (Emphasis added.) 327 Ill. App. 3d at 874-75. We disagree.

In 
County of Cook
, an employee who, for more than 10 years, suffered from hypertension which had, in the past, required hospitalization, had a stroke as she pushed her chair back from her desk at work, in preparation to go to lunch. The employee presented no expert evidence to establish a causal link between her stroke and her employment. The County’s expert, on the other hand, testified that there was no causal connection between the employee’s work duties and her stroke and subsequent disability. In resolving the issue of causation, we said:

“Every employee whose disease or preexisting condition disables him while at work is not automatically entitled to a recovery under the Workmen’s Compensation Act. In 
Carson-Payson Co. v. Industrial Com.
 (1930), 340 Ill. 632, 639, this court said, quoting from Lord Chancellor Loreburn’s opinion in 
Hughes v. Clover, Clayton & Co.
 (1910), 102 L.T.R. 340, 342, 
aff’g
 (1909) 2 K.B. 798,101 L.T.R. 475:

‘ “*** In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that, whatever the man had been doing, it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone, or from the disease and employment taken together, looking at it broadly.” ’ ” 
County of Cook
, 68 Ill. 2d at 31-32.

We concluded that, even though the employee had suffered a stroke while at work when getting up from her chair, the stroke did not arise from her employment and, thus, there was no causal connection between her employment and her condition of ill-being resulting from the stroke. The Commission’s determination to the contrary was not supported by the evidence and, thus, was against the manifest weight of the evidence. 
County of Cook
, 68 Ill. 2d at 34.

In 
Greater Peoria
, the employee was a bus driver who, after completing her route, went to the driver’s room to return bus schedules and transfers. She accidentally dropped the papers on the floor and, when bending over to retrieve them, lost her balance. In trying to “catch herself,” she may or may not have hit her shoulder on something. After this incident, the employee’s shoulder pained her and she later determined that she had dislocated her shoulder. Medical evidence established that the employee’s shoulder was a “time bomb” that might have dislocated with any normal daily activity. We concluded that although the dislocation occurred at work, it did not arise out of the employment. We said:

“Completely absent from the record is any evidence that claimant’s work (1) further deteriorated her shoulder, (2) aggravated it, (3) precipitated its dislocation, or (4) accelerated the occasion for its dislocation.” 
Greater Peoria
, 81 Ill. 2d at 43.

Since the record indicated that the employee’s preexisting condition was the actual cause her condition of ill-being, we held that the Commission’s determination that the employee’s injury arose out of her employment was against the manifest weight of the evidence. 
Greater Peoria
, 81 Ill. 2d at 43.

Finally, in 
Hansel & Gretel
, the employee was a child-day-care worker. Medical evidence established that the employee had a longstanding problem with her right knee. Over the past 10 years, the knee would often get stiff and “lock up.” One day, while at work, the employee’s leg “locked up” after she had been sitting at a low (children’s) table. When the employee attempted to get up from the chair she felt pain in her knee and, ultimately, had to “hop” up with her right knee still “locked up.” She later sought medical treatment and, a month later, had surgery on her knee. Surgery revealed that the employee had a meniscus tear in the cartilage of her right knee. The surgeon testified that there was no way to tell whether the tear had been present before the work incident or for how long it might have existed. The surgeon testified that it was possible that the “locking up” incident at work could have exacerbated a preexisting tear, but it was also possible that the tear had been the same both before and after the incident. The appellate court, on review, concluded that it was against the manifest weight of the evidence for the Commission to have found that the incident at work aggravated the claimant’s preexisting condition. 
Hansel & Gretel
, 215 Ill. App. 3d at 294.

In each of the three above-cited cases the reviewing court found that the manifest weight of the evidence showed that the employee’s condition of ill-being was caused by the normal degenerative process of the preexisting condition and not because an accidental injury which arose out of the employment aggravated or accelerated the preexisting condition. In contrast, the record in the case at bar supports the Commission’s finding that when claimant twisted his ankle he was performing duties which were related to his employment and that this injury was causally connected to the onset of Charcot.

CONCLUSION

When an employee with a preexisting condition is injured in the course of his employment, serious questions are raised about the genesis of the injury and the resulting disability. The Commission must decide whether there was an accidental injury which arose out of the employment, whether the accidental injury aggravated or accelerated the preexisting condition or whether the preexisting condition alone was the cause of the injury. Generally, these will be factual questions to be resolved by the Commission. However, the Commission’s decision must be supported by the record and not based on mere speculation or conjecture. If there is an adequate basis for finding that an occupational activity aggravated or accelerated a preexisting condition, and, thereby, caused the disability, the Commission’s award of compensation must be confirmed.

In the present case, the Commission found that claimant’s March 26, 1998, work-related accidental injury was causally related to the claimant’s Charcot. Based on our review of the record, we find that it may be legitimately inferred from the evidence before the Commission that occupational activity was, in fact, a causative factor in hastening claimant’s contraction of Charcot. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE RARICK took no part in the consideration or decision of this case.