# Illinois Official Reports

## Appellate Court

---

### *Village of Villa Park v. Illinois Workers' Compensation Comm'n*,
### 2013 IL App (2d) 130038WC

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF VILLA PARK, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (John Simons, Appellee). |
| District & No. | Second District<br>Docket No. 2-13-0038WC |
| Filed | December 31, 2013 |
| Rehearing denied | February 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The decision of the Workers' Compensation Commission awarding benefits to claimant for the back injury he suffered when he fell down stairs after his knee buckled was upheld where the evidence established that he worked as a community service officer at a police station, he was forced to use the stairs at the station for his personal comfort and to complete his work, and even though he had injured his knee in a prior fall and had been seen walking with a limp, the conclusion that his employment placed him at a greater risk of falling was supported by the evidence and thereby satisfied the exception to the general rule of noncompensability for injuries resulting from a personal risk and established that he was exposed to a greater risk of injury than the general public and that his injury arose out of and in the course of his employment. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-000027; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel W. Arkin and Jeffrey N. Powell, both of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellant.

Francis J. Discipio, of Law Offices of Francis J. Discipio, Ltd., of Oak Brook, for appellee.

Panel

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Harris, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    The Village of Villa Park (Village) appeals from an order of the circuit court confirming a decision of the Illinois Workers' Compensation Commission (Commission) that awarded the claimant, John Simons, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2006)), after finding that his injury arose out of and in the course of his employment. For the following reasons, we affirm the judgment of the circuit court.

¶ 2    The following facts are taken from the evidence presented at the arbitration hearing conducted on September 17, 2008, and October 8, 2008. The claimant testified that he was employed by the Village as a community service officer. His duties included handling ordinance complaints, theft reports, various noncriminal in-progress calls, accident reports, parking enforcement, police officer backup, and other duties.

¶ 3    On April 5, 2007, the claimant was at work and on duty in the police station to which he was assigned. Around 6 or 7 p.m., he was upstairs in the watch commander's office for a briefing, after which the claimant and another officer began walking toward the back side of the building. The claimant stated that he turned and started walking down the rear stairwell to the locker room on the lower level. When he reached the third step, his right knee "gave out," causing him to fall down about seven stairs to the landing below, sustaining injuries to his right knee and lower back.

¶ 4    The claimant testified that the back stairwell consisted of about 10 steps, a landing, and then another 10 steps to the lower level. The lower level contained the locker rooms, the briefing room, the lunch area, and the shooting range. The locker rooms were for the use of the police officers and were not open to the general public. The claimant described the lower level as a secured area and stated that the building entrance was accessible only with a pass key.

¶ 5    On a typical work day, the claimant would enter the building through the back door and descend the stairs to the locker room in order to change from his civilian clothes to his uniform. He would walk back up the stairs to the mailbox area to check for any pertinent information, then return downstairs to the lower level for his briefing meeting. The claimant testified that, before his shift even began, he would have traversed the back stairs at least two to four times. At the end of the day, the claimant would again descend the stairs to the locker room to change into his civilian clothes. According to the claimant, during most days, he would also traverse the stairs to go to the lunch room for his breaks or lunch to get a soda, or to get rain gear or other equipment he needed for his duties.

¶ 6    The claimant described an earlier accident which injured his right knee. On January 13, 2007, he was at his vacation home in Wisconsin when he slipped on a patch of ice. Later that day, he fell off of a pile of wood and twisted the same knee. After one or two days, his knee still did not feel normal. According to the claimant, he then informed his supervisors about his injury and left to go to Elmhurst Hospital, where he was treated by his personal physician, Dr. Karim Yunez. An MRI was subsequently ordered which revealed a small joint effusion with complex tears to the anterior horn, posterior horn and body of the lateral meniscus. Dr. Yunez referred the claimant to Dr. William Hadesman, an orthopedic surgeon. On March 6, 2007, based upon the results of the MRI, Dr. Hadesman recommended that the claimant undergo knee surgery. The claimant agreed, and the surgery was scheduled for May 2, 2007. Dr. Hadesman also prescribed Norco for the claimant's pain. The claimant subsequently returned to regular duty at work while waiting to undergo the recommended knee surgery.

¶ 7    The claimant testified that the injury to his right knee on January 13, 2007, was the only injury he sustained to the knee prior to his fall on April 5, 2007. He described his knee pain following the events of January 13, 2007, as intermittent and not incapacitating, but testified that when he engaged in strenuous activity, he would feel a burning, sore sensation.

¶ 8    Robert Budig testified that he was employed by the Village as the deputy chief of police and that he worked in the same police station as the claimant. According to Budig, on numerous occasions during the period between January 13, 2007, and April 5, 2007, he observed the claimant walking with a limp. Budig discussed the limp with the claimant, who told him that it was caused by the fall at his cabin in January. Budig's testimony was contradicted by that of Officer Scott Schroeder, who testified that he did not notice the claimant limping prior to the April 5 accident.

¶ 9    The claimant stated that, on April 5, 2007, as he began descending the steps, he "knew something was wrong." His knee then gave out in a way that it never had before. He stated that, after falling down the stairs and impacting the landing, he felt pain in his lower back and a sharp, throbbing pain in his knee, which began to swell. The claimant immediately sought treatment in the emergency room at Elmhurst Hospital. The following day, he saw Dr. Yunez for his back pain. He subsequently returned to Dr. Hadesman, who, on April 17, 2007, prescribed a lumbar MRI and a repeat MRI for his knee. The MRI on the claimant's knee disclosed an undersurface tear in the posterior horn of the meniscus which was unchanged from the previous scan. The lumbar MRI disclosed some hypertrophy of the facet joints posteriorly at L4-L5 and L5-S1 and some focal disc herniation and spinal stenosis, but no

significant disc desiccation, bulging or herniation The claimant testified that he was given authorization to be off of work by both Dr. Yunez for his back condition and Dr. Hadesman for his knee.

¶ 10    The claimant testified that, after the April 5 fall, he was no longer able to function the way he had previously. He suffered a loss of range of motion in his knee and initially walked with a limp. According to the claimant, he had never injured his back prior to the April 5 fall. He indicated that, prior to the April 5 fall, he was experiencing pain at a level of 1 or 2 out of 10 and that, after the fall, the pain was elevated to an 8 or 9. The combination of the injury to his back and knee prevented him from performing any type of physical activity.

¶ 11    The claimant testified that, at the time of the hearing, he suffered from constant back pain which varied depending on the level of his physical activity. If he sat for long periods of time, he had to get up and stretch because his back was sore. He testified that his knee also becomes sore and needs to be stretched out when he is stationary for long periods. The claimant stated that he is no longer able to perform various activities around his home, such as those requiring heavy lifting, and that he is no longer able to run or squat. The claimant testified that, prior to the April 5 fall, he was able to run and squat and suffered none of the above limitations. After the claimant's May 2, 2007, right knee surgery, Dr. Yunez prescribed physical therapy for the claimant's back. According to the claimant, the prescribed therapy seemed to hurt more than it helped, so he discontinued the treatment. The claimant was prescribed Vicodin for pain, which he took only on an as-needed basis. The claimant returned to full duty on August 6, 2007.

¶ 12    At the conclusion of the hearing, the arbitrator found that, while the claimant's fall did not appear to be idiopathic in nature, the act of walking down stairs by itself did not establish a risk greater than those faced outside the work place. Thus, the arbitrator concluded that the claimant failed to prove that his injuries arose out of and in the course of his employment.

¶ 13    In a decision with one commissioner dissenting, the Commission reversed the arbitrator's decision as to the claimant's back injury only, finding that it was caused by an accident arising out of and in the course of his employment. The Commission reasoned that, at the time of the April 5 fall, the claimant's use of the stairs fell within the "personal comfort doctrine" and, therefore, arose out of and in the course of his employment. The Commission focused on the claimant's testimony that he used the stairs numerous times per day in order to access the police locker room and for personal breaks. Further, the Commission concluded that the claimant's necessary and repeated use the stairs for his employment exposed him to a greater risk than the general public. With regard to his knee, however, the Commission found that the claimant's injury and subsequent surgery were not causally related to his workplace accident of April 5, 2007, but rather caused by his fall on January 13, 2007. The Commission pointed out that the second MRI of the claimant's knee reflected no change from the original MRI on March 6, 2007. Accordingly, the Commission ordered the Village to pay the claimant permanent partial disability benefits in the amount of $456.43 per week for a period of 25 weeks under section 8(d)(2) of the Act, reflecting the claimant's loss of 5% of the person as a whole. 820 ILCS 305/8(d)(2) (West 2006).

¶ 14    The dissenting commissioner was of the opinion that the evidence did not support the majority's finding because the claimant testified he fell due to his knee buckling. He explained

- 4 -

that no evidence indicated that the stairs were defective, that the claimant was carrying anything related to his employment when he fell, or that he was rushing down the stairs for any work-related reason. Rather, the dissenting commissioner opined that the evidence supported a finding that the claimant fell because of his preexisting knee condition and that the act of walking down the stairs at work did not expose the claimant to a risk greater than that faced by the general public.

¶ 15 The Village sought judicial review of the Commission's decision in the circuit court of Du Page County. On October 1, 2010, the circuit court confirmed the Commission's decision, and this appeal followed.

¶ 16 On appeal, the Village argues that the Commission's determination that the claimant's back injury arose out of a risk inherent in his employment is against the manifest weight of the evidence. Specifically, the Village contends that the Commission erred in relying on the personal-comfort doctrine because there was no evidence that the claimant's use of the stairs was related to anything necessary for his health or comfort. The Village also contends that the Commission erred in determining that the claimant's daily, frequent use of the stairs exposed him to a greater risk than that to which the general public is exposed when traversing stairs. We disagree.

¶ 17 To obtain compensation under the Act, a claimant bears the burden of showing, by a preponderance of the evidence, that he has suffered an injury which arose out of and in the course of his employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203-04 (2003). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989).

¶ 18 "In the course of employment" refers to the time, place and circumstances surrounding the injury, meaning that, generally, the injury must occur within the time and space boundaries of the employment. *Sisbro*, 207 Ill. 2d at 203. In this case, the claimant was working in the police station to which he was assigned at the time of his fall on April 5, 2007. Consequently, there is no dispute on the question of whether his injury occurred "in the course of" his employment.

¶ 19 Additionally, however, the injury must also "arise out of" the employment. To satisfy the "arising out of" requirement, "it must be shown that the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d at 203. "Stated otherwise, 'an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citations.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties.' " *Sisbro*, 207 Ill. 2d at 204 (quoting *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989)). The question of whether a causal relationship exists between a claimant's employment and his workplace injury is a question of fact to be resolved by the Commission (*Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244 (1984)), and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence

(*Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987); *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992)).

¶ 20 "There are three categories of risk an employee may be exposed to: (1) risks distinctly associated with the employment; (2) risks personal to the employee; and (3) neutral risks which have no particular employment or personal characteristics." *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 162 (2000). A fall caused by a weak knee is a personal risk. *Illinois Consolidated Telephone Co. v. Industrial Comm'n*, 314 Ill. App. 3d 347, 352-53 (2000) (Rakowski, J., specially concurring). Injuries resulting from a fall caused by some personal weakness of the claimant, such as a weak knee, are not compensable under the Act unless the claimant's employment significantly contributes to the injury by placing him in a position of greater risk of falling. *Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 16 (1996). Falling while traversing stairs is a neutral risk, and the injuries resulting therefrom generally do not arise out of employment. *Illinois Consolidated Telephone Co.*, 314 Ill. App. 3d at 353. As with personal risks, however, an exception to noncompensability under the Act exists where the requirements of the claimant's employment create a risk to which the general public is not exposed. *Id.* "The increased risk may be qualitative *** or quantitative, such as where the [claimant] is exposed to a common risk more frequently than the general public." *Id.* We believe that the facts of this case support the Commission's finding that the claimant's fall and resulting injury arose both out of and in the course of his employment with the Village and that its holding in this regard is not against the manifest weigh of the evidence.

¶ 21 The evidence of record supports the Commission's finding that the claimant was "continually forced to use the stairway" both for his personal comfort and "to complete his work related activities." Specifically, the evidence established that the claimant was required to traverse the stairs in the police station a minimum of six times per day. This fact, coupled with evidence that the claimant informed his superiors, prior to his fall on April 5, 2007, that he had injured his knee and the testimony of Deputy Chief Budig that he had seen the claimant walk with a limp on numerous occasions prior to April 5, 2007, certainly supports the inference that the Village required the claimant to continuously traverse the stairs in the police station, knowing that he had an injured knee. These facts are more than sufficient to support both the conclusion that the claimant's employment placed him in a position of greater risk of falling, satisfying the exception to the general rule of noncompensability for injuries resulting from a personal risk, and that the frequency with which the claimant was required to traverse the stairs constituted an increased risk on a quantitative basis from that to which the general public is exposed.

¶ 22 In passing, the Village also argues in its brief that the Commission's finding that the claimant's low back injury is directly and causally related to his work injury on April 5, 2007, is against the manifest weight of the evidence. Its argument in this regard is grounded solely upon the proposition that the claimant's injury did not arise out of his employment; a proposition we have rejected for the reasons stated above. Consequently we also reject its argument in this context.

- 6 -

¶ 23        Based upon the foregoing analysis, we affirm the judgment of the circuit court of Du Page County which confirmed the Commission's decision.

¶ 24        Affirmed